COPY

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

YEVETTE WILSHIRE, individually and in
Her Capacity as administratrix of the Estate of
JEREMY RINEHART, Deceased,

2011 OCT 18 PM 4: 24

FILE
PUTNAM CO. CIRCUIT COURT

      Plaintiff,

v.

                                      Civil Action No. *11-C-295*
                                        Judge *Stowers*

BRIAN S. LOVE, MD, and OAK HILL HOSPITAL
CORPORATION d/b/a PLATEAU MEDICAL CENTER, INC.,

      Defendants.

## COMPLAINT

    Plaintiff Yevette Wilshire ("Wilshire"), in her capacity as Administratrix of the Estate of Jeremy Rinehart ("Rinehart"), brings this action to obtain full and complete relief for the negligence that resulted in Rinehart's pain and suffering, pursuant to W. Va. Code § 55-7B-1, *et seq.*, and to obtain full and complete relief for Rinehart's wrongful death according to W. Va. Code §§ 55-7-1, *et seq.*, and 55-7B-1, *et seq.*

### Parties

    1.    Plaintiff Wilshire is a resident of the state of West Virginia and was appointed Administratrix of the Estate of the late Jeremy Rinehart as set forth in Exhibit A.

    2.    Defendant Brian S. Love ("Love"), is a medical doctor who is licensed to practice in West Virginia and who practices in and, on information and belief, resides in Putnam County, West Virginia.

    3.    Defendant Oak Hill Hospital Corporation (Plateau), doing business as Plateau Medical Center, provides medical services, including diagnosis and treatment, to persons in Oak Hill, WV.

### Facts

    4.    Plaintiff Wilshire is the mother of Jeremy Rinehart.

    5.    At all relevant times herein, defendant Love has been a medical doctor, licensed to practice in West Virginia, and has held himself out as a practicing health care provider, qualified and


DEFENDANT'S EXHIBIT
*A*

competent to diagnose and provide medical care and treatment to patients including emergency medical care.

6.      At all relevant times herein, defendant Plateau has held itself out as a provider of medical care, including emergency care, contracting with and/or employing physicians and health care providers who are qualified and competent to diagnose and provide medical care and treatment to patients including emergency care.

7.      At all times relevant herein, defendant Love provided medical care, including diagnosis and treatment, at Plateau.

8.      On August 22, 2009, Jeremy Rinehart became seriously ill, in the custody of the Oak Hill Police Department as a result of his ingestion of cocaine in a plastic bag.

9.      Mr. Rinehart was taken to Plateau where he was evaluated and treated by defendant Love and, on information and belief, by other medical providers, including nurses, at Plateau.

10.     Defendants discharged Mr. Rinehart from Plateau to the custody of the police although, at the time, Mr. Rinehart remained at risk of death or serious bodily injury without continuing care and treatment by qualified medical providers.

11.     Shortly after his discharge by the defendants, Mr. Rinehart suffered severe pain before losing consciousness and being transported to the Raleigh General Hospital.

12.     On August 26, 2009, Mr. Rinehart died as a direct and proximate result of his discharge from the Plateau Medical Center and the negligence of the defendants.

13.     Plateau is, on information and belief, liable for the negligence of defendant Love and/or that of other medical providers at Plateau.

14.     The plaintiff has complied with West Virginia Code §55-7B-6 by serving the required Notice of Claim and Certificate of Merit upon the defendants.

15.     This action is timely filed consistent with West Virginia Code §55-7B-6 (h).

### First Cause of Action
**(Mr. Rinehart's Claim for Damages Prior to Death)**

16.    Defendants failed to exercise the degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances as set forth in Certificate of Merit attached hereto as Exhibit B.

17.    As a direct and proximate result of the failure of the defendants to meet the standard of care as set forth in the Certificate of Merit, Mr. Rinehart suffered severe and extreme pain and suffering following his discharged from Plateau.

18.    Defendants are liable to Mrs. Wilshire, as the Administratrix of Mr. Rinehart's Estate, for damages in an amount to be determined by a jury, including past medical and other health care expenses, for pain, suffering, and emotional distress.

### Second Cause of Action
**(Wrongful Death)**

19.    Defendants failed to exercise the degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances as set forth in Certificate of Merit.

20.    As a direct and proximate result of the failure of the defendants to meet the standard of care as set forth in the Certificate of Merit, Mr. Rinehart died.

21.    Defendants are liable to Mrs. Wilshire, as the Administratrix of Mr. Rinehart's Estate, for damages for the wrongful death of Mr. Rinehart in an amount to be determined by a jury, pursuant to W. Va. Code § 55-7-6, on behalf of herself and all others entitled to relief.

22.    Such damages include:

    a.    sorrow, mental anguish, and solace, including, but not limited to, loss of society, companionship, comfort, guidance, kindly offices and advice of Mr. Rinehart;

    b.    compensation for reasonably expected loss of income and household services of Mr. Rinehart;

c.    services, protection, care. and assistance provided by Mr. Rinehart;

d.    medical expenses;

e.    economic loss;

f.    reasonable funeral expenses; and

g.    such other and further relief as to the jury may seem fair and just.

### Prayer for Relief

WHEREFORE, plaintiff prays that she be granted relief as follows:

(a)    damages as set forth in this Complaint, in an amount to be determined by the jury;

(b)    pre- and post-judgment interest; and

(c)    such other and further relief as may be available at law and/or as the Court may deem just and equitable.

### Jury Trial Demand

Plaintiff demands a jury trial on all issues triable to a jury.

PLAINTIFF,
BY COUNSEL.

ALLAN N. KARLIN, WV BAR # 1953
SARAH W. MONTORO, WV BAR # 10239
ALLAN N. KARLIN & ASSOCIATES
174 CHANCERY ROW
MORGANTOWN, WV  26505
(304) 296-8266

-4-

BOOK 152 PAGE 656

IN VACATION:  IN THE OFFICE OF THE CLERK OF THE COUNTY COMMISSION
OF FAYETTE COUNTY, WEST VIRGINIA:

September 28, 2009

This day, Yevetta D. Wilshire moved the appointment of herself as Administratrix of the estate of JEREMY THOMAS RINEHART, who departed this life on August 26, 2009, and was at that time a resident of this county.

Thereupon appeared the said Yevetta D. Wilshire, 15 Mountain View Estate, Oak Hill, WV 25901, and filed her affidavit showing the distributees of the estate and stated on oath that the decedent left no valid Will as far as she knows.

The said, Yevetta D. Wilshire, was then appointed Administratrix of the estate of JEREMY THOMAS RINEHART, deceased.

Thereupon appeared the said Yevetta D. Wilshire, who with Michael Settle, her surety, entered into and acknowledged a bond in the penalty of One Thousand ($1,000.00) Dollars, conditioned as the law directs.

Teste: Kelvin E. Holliday, Clerk

By: *Stephanie J Harrah* Deputy

State of West Virginia, County of Fayette:

Upon appointment as Administratrix of the estate of JEREMY THOMAS RINEHART, I will faithfully perform my duties as such Administratrix to the best of my skill and judgment, and that the list of distributees is correct, so help me God.

*Yevetta D. Wilshire*

Subscribed and sworn to before me this 28th day of September, 2009

*Stephanie J Harrah*

Deputy Clerk

FAYETTE COUNTY, WV
FILED
September 28, 2009   09:24:59
KELVIN E. HOLLIDAY
COUNTY CLERK
TRANSACTION NO: 200900355S
PROBATE BOOK
Book: 00152   Page: 00656
Line: 00001
REPRINTED ON: 09/29/2009

West Virginia, County of Fayette:
I, KELVIN E. HOLLIDAY, Clerk of the County Commission of Fayette County, West Virginia, hereby certify that the foregoing is a true copy from the records of my office.
In Testimony Whereof, I hereunto place my hand and affix the seal of said Commission this the __ day of Feb. 2011.
KELVIN E. HOLLIDAY, Clerk
By: Deputy

EXHIBIT A

August 17, 2011

<u>Medical Negligence Screening Certificate of Merit</u>
<u>Susi Vassallo, M.D.</u>

My name is Susi Vassallo, M.D. and I am an Emergency Medicine Physician and Medical Toxicologist at the New York University School of Medicine and the New York Regional Poison Control Center. I received my medical degree from the University of Texas Health Science Center at Houston in 1984. I completed residency training in Emergency Medicine at Wayne State University / Detroit Receiving Hospital in 1987 and Medical Toxicology Fellowship training at the New York Regional Poison Control Center / New York University School of Medicine in 1989. I have been at New York University School of Medicine since 1987 and I am currently a Clinical Associate Professor of Emergency Medicine. I am a Certified Correctional Health Professional and care for numerous prisoners as part of my practice in the Bellevue Emergency Department. I am familiar with the standards of care for a patient presenting in the condition as described in the records in this case. My curriculum vitae is attached.

I have reviewed the following records concerning Jeremy Thomas Rinehart:

Autopsy Report

Death Certificate

Oak Hill Police Department


EXHIBIT
B

Witness Statements

General Ambulance Service

Jan-Care Ambulance

911 tapes

Plateau Medical Center

Raleigh General Hospital

Medical Record Review

Pre-hospital Notes

Mr. Jeremy Rinehart arrived in the Plateau Medical Center Emergency
Department at 7:39 pm on August 22, 2009. He was brought to the Emergency
Department by Emergency Medical Services (EMS) and triaged at 7:39 pm. At
that time, the triage vital signs were Temperature 98.2 (T), Pulse 142,
Respirations 20/ minute and blood pressure 93/32.

The Emergency Medical Service records reveal the call to the jail for possible
overdose. The patient was in a holding cell. Once removed the patient was
seated in the booking room. The patient stated, "I took 5 grams of coke". (EMS
record ANK 0074) At this point the patient became combative towards EMS and
police. Per EMS records, the patient would not cooperate with further evaluation.
Vital signs at the jail were pulse 116, respiratory rate 26, and blood pressure 122
systolic. The pupils were dilated and the skin was warm. The record reveals EMS
arrival at the hospital at 19:29. Advanced life support (ALS) was attempted
"however patient too combative".

## Physician Notes

The Emergency Department physician record at Plateau is timed at 7:30pm. The source of information was the patient, EMS and the "cops". The nursing notes were reviewed. The patient was noted to be intoxicated with cocaine. The onset of the problem was one to two hours before; the patient was noted to have ingested approximately 0.5 to one gram of cocaine. The context was an intentional ingestion when the police pulled him over. There was no suicidal or homicidal ideation. The patient was noted to be combative and not cooperative and hostile at times. There was no chest pain or shortness of breath. The patient was noted to be angry and complain of wrist pain from the handcuffs. The review of systems was significant for stress and myalgias. The review of systems was noted to be otherwise negative, but limited due to intoxication. A question mark followed this notation. The current medications were noted to be unknown but "suspect cocaine ingestion". Allergies were none. Substances were listed as "Pot and coke".

The physical exam noted the patient to be in NAD (no acute distress) well nourished, combative /angry and anxious. The patient was missing a third of a tooth. His pupils were equal round and reactive to light (PERRL) His extra ocular muscles were intact (EOMI). The neck and chest exam was normal. The cardiovascular exam was notable for a fast heart rate "tachycardic". There was no respiratory distress and the breath sounds were normal. The abdomen and back exam was normal and the extremity exam was notable for the presence of handcuffs and tattoos. The Psychiatric exam was notable for the patient being anxious, hostile "initially at times". The patient was noted to have inappropriate behavior "angry at police" and "affirms drug use".

Laboratory values were noted to be normal and negative, except for a positive toxicology screen for THC (marijuana) and cocaine. The electrocardiogram

(EKG) was significant for sinus tachycardia (pt combative, not cooperative, no pain" is written on EKG ANK 0116) and the second EKG (#2) was "improved". "Pt moving" is written on this second EKG. (ANK 0117).

At 21:30 the patient was rechecked and improved and at 21:55 the patient was rechecked again and was improved. Consultation was obtained with Dr. Mehta and the chart appears to indicate that Dr. Mehta said it was "ok to D/C" meaning okay to discharge the patient. This consultation is timed at 21:45. The pulse was 110 and there was no chest pain or shortness of breath and the patient's behavior was normal. The patient was to follow up with Dr. Mehta and to avoid cocaine or stimulants and to return to the Emergency Room for problems (difficult to read) No gastric contamination was performed.

The order procedure form shows that a CBC (complete blood count), CMP (comprehensive metabolic profile) and Tylenol and aspirin levels, blood cultures and cardiac enzymes were sent at 8:52pm (20:52). CXR was ordered at 19:39, Repeat EKG ordered at 20:30, and the Poison Control Center was contacted at 19:30. Notes from the West Virginia Poison Control Center are marked. Medication records describe 2mg Ativan intramuscular ordered at 19:39 and administered at 19:45, 0.5 mg Ativan ordered to be given intravenously at 20:15, one liter normal saline bolus ordered at 20:15 and one liter normal saline bolus verbal order given at 2100.

Laboratory results included urine drug screening positive for cocaine and THC, and abnormal electrolytes significant for sodium 139, potassium of 4.0, chloride 98 and carbon dioxide 19. 4. The anion gap was abnormal at 26. Salicylates and acetaminophen levels were negative and troponin was normal.

An electrocardiographic rhythm strip is available and the pulse is 125 on this tracing. (ANK 0095) Initial EKG performed at 7:55pm is available for review and shows a heart rate of 137 and there are handwritten notes indicating no pain and

patient combative, not cooperative. Subsequent EKG performed at 8:37pm shows a heart rate of 133; the patient noted to be moving. Disposition charting shows the time of discharge to be 22:00. The discharge vital signs are pulse of 107, temperature (T) 97.6, respiratory rate 20 and blood pressure 140/ 78.

Nursing Notes

The computerized nursing notes comprise pages 1-3. (ANK 0109 and 0110 OR ANK 0086 and ANK 0111). Some entries appear out of time order.

The nursing triage at 19:39 "OHPD here states that patient was pulled over and stopped, Pt then states that he swallowed unknown amount of cocaine in a bag? Patient got pepper spray on both eyes. On handcuffs and shackles" (ANK 0106)

In an entry timed at 2015 (8:15pm) the patient was noted to be "yelling and cussing still.  Growling at times."

Adult Assessment at 20:16 notes the patient to be inappropriate, hostile, agitated and have ineffective coping, an unsteady gait observed. Speaks clearly. Cardiac monitor attached to patient; rhythm strips attached to the chart.

Disposition 22:35 the entry states the patient left the department at 22:00

Flow sheets: 22:32

Reassessment 22:44: The patient was reassessed at 21:00.  "PT CALMER MORE ALERT CONVERSING WITHOUT ANY CUSSING AND YELLING."

Six sets of computer vital signs. Tachycardic, increased respiratory rate, hypertensive.

Summary of Events

The patient was arrested. Shortly after arrest, the patient told the police that he had ingested 5 grams of cocaine. (ANK 0025 Use of Force, ANK 0027 Criminal complaint) While at the Oak Hill Police Department, Mr. Rinehart became very

combative and agitated. (ANK 0028) EMS was called and immediate response was initiated for possible overdose. (EMS Patient care record ANK 0074-0075, same records ANK 0032-0033) The patient was asked what he took and he stated, "I took five grams of coke. Now give me all your valium before my heart blows up" (EMS Patient care record ANK 0074 as above) Mr. Rinehart kept stating to tell them to hurry up because his heart was going to bust. (Officer Prince report, ANK 0047) The defendant also asked officers to take him to the hospital. (Prince report, ANK 0047) The patient was screaming and combative at the hospital (ANK 0040). Once at Plateau Medical center, the patient began to curse and scream using offensive language. (ANK 0028) He was combative towards the EMS and hospital workers. (ANK 0042 Officer Wingo report) The nursing triage at 19:39 "OHPD here states that patient was pulled over and stopped, Pt then states that he swallowed unknown amount of cocaine in a bag. Patient got pepper spray on both eyes. On handcuffs and shackles" (ANK 0106) Four officers held the patient down while the hospital staff worked on him and gave him medical attention; "When this officer and Pfc. Jarvis arrived at the hospital we could hear Jeremy screaming and being combative. So this officer, Sgt. Prince, Pfc. Jarvis and Ptl. Wingo held him down while the hospital staff worked on him and gave him medical attention." ((Officer Wingo report, ANK 0039) Officer Prince describes in his report that Mr. Rinehart was combative and cursing. Officer Prince asked Mr. Rinehart how much cocaine he swallowed and the patient stated he swallowed a half of a gram of cocaine in a plastic bag. (Prince report, 0048) The patient was in the hospital from 7:39pm to 10pm, approximately 2 hours and twenty-one minutes. He received a dose of 2mg Ativan intramuscularly at 19:45 and a dose of Ativan 0.5 mg intravenously at 20:15 pm.

At 22:06 the patient was in the back of a police car traveling towards the jail (ANK 0042 Officer Wingo report) The patient became combative in the back of the police car. He told officers he was "seeing red" and "his heart was going to burst". "At approximately 22:18 hours this officer notified Fayette County 911 communications to send an EMS unit. (Prince report 0049) The EMS report shows the EMS enroute at 22:19. (ANK 0076, second EMS patient care record) The patient was in cardiac arrest upon arrival of the EMS unit. (ANK 0076-0077) At 22:47 EMS with the patient arrived at Raleigh General Hospital. (ANK 0076-0077)

<u>I note the following deviations from the standard of care</u>:

1. Dr. Love failed to adequately observe the patient in the hospital. The patient required admission to the hospital. The history of ingestion of a bag filled with a potentially lethal amount of cocaine; the clinical presentation in the emergency department with acute life-threatening cocaine intoxication; the continued presence of abnormal vital signs including tachycardia and increased respiratory rate; all these were indications of the need for hospitalization. The patient was under the influence of cocaine that had leaked from a bag. The amount in the bag was five grams, or half a gram to one gram. Cocaine was leaking from the bag and causing cocaine poisoning. It was unknown as to how much of the cocaine had leaked from the bag and how much was left to cause further life threatening cocaine toxicity. A temporary improvement in vital signs after Ativan was not sufficient for discharge. Given the clinical presentation of this patient and the history of ingestion, the patient required admission to the hospital. Dr. Mehta concurred with discharge in spite of the medical evidence that Mr. Rinehart needed hospitalization.

2. Dr. Love did not perform gastric decontamination with charcoal, despite the history of ingestion of a bag containing a potentially lethal amount of cocaine.

3. Dr. Love did not treat the patient with adequate doses of benzodiazepines. What is an adequate dose of benzodiazepines? An adequate dose of benzodiazepines for cocaine poisoning induces sedation and establishes and maintains normalization of vital signs. In critically ill cocaine poisoning, it usually requires frequent monitoring and multiple doses over time. The patient's vital signs at discharge were improved, but abnormal. These abnormal vital signs were consistent with the history of ingestion of a bag of cocaine and reflected ongoing underlying cocaine poisoning. The patient's electrocardiogram at 7:55pm demonstrated a heart rate of 137 and frequent premature ventricular contractions. In a patient who just ingested a potentially lethal amount of cocaine in a bag, this was a sign of instability of the heart rhythm caused by cocaine poisoning. At 8:37pm, the patient had a heart rate of 133. Because of the inadequate treatment and the inadequate period of observation and premature discharge, the patient suffered a cardiac arrest and died.

4. Dr. Love failed to recognize the importance of the metabolic derangements of anion gap metabolic acidosis in cocaine poisoning. Additionally, a core temperature should have been obtained and was not. Acidosis, agitation, electrocardiographic abnormalities and abnormal vital signs were indicators of cocaine poisoning.

It is my opinion to a reasonable degree of medical certainty that deviations from the standard of care, which occurred in the hospital emergency department, were

a proximate cause of the suffering before death and the death of Jeremy Rinehart.

My opinions are based on the records I have reviewed. I reserve the right to amend my opinion should more information regarding the care and treatment become available.

*S Vassallo ms*

Susi Vassallo, M.D., FACEP, FACMT

*Sword before me on the 18th day of August 2011*

PHILLIP RODRIGUEZ
NOTARY PUBLIC, STATE OF NEW YORK
No. 01R06208170
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES JUNE 22, 2013

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Department of Health & Human Services Office of the General Counsel, Room 4760, 330 Independence Avenue, SW Washington, DC 20201 | Yevette Wilshire, 248 Briarwood Place, Oak Hill, WV 25901 (Ms. Wilshire brings this case in her capacity as Administratrix of the Estate of Jeremy Rinehart.) |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 04/25/1976 | Single | Died 08/26/2009 | Not Applicable |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Medical malpractice for the failure to properly care for Jeremy Rinehart who was brought to Plateau Medical Center in Oak Hill, WV after swallowing a bag of cocaine. At Plateau, he was observed and treated by Dr. Brian Love, whose notes indicate that Mr. Rinehart was discharged based on a consultation with Dr. Sanjay Metha of New River Health Association, Inc., who recommended and/or concurred in the decision to discharge Mr. Rinehart despite the fact that Mr. Rinehart had recently ingested a lethal dose of cocaine. See attached Certificate of Merit. New River is a federally funded health center.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

This is not a property claim. This is a claim for suffering prior to death and wrongful death.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Jeremy Rinehart died and, in addition, experienced severe suffering prior to his death due to the medical negligence of Dr. Sanjay Metha of New River Health Associates, Inc. His injury and death resulted from Dr. Metha's recommendation and/or concurrence in the decision to discharge Mr. Rinehart from Plateau Medical Center despite the fact that Mr. Rinehart was still suffering from cocaine poisoning. See attached Certificate of Merit.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| See attached witness list. | | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars). | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| | $1,000,000.00 | $1,500,000.00 | $2,500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| Allan M Karl | 304-296-8266 | 08/18/2011 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2



EXHIBIT
1

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

The claimant has no insurance that covers this claim.

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No | 17. If deductible, state amount.

0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Not applicable.

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

The amount claimed should be substantiated by competent evidence as follows:

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

Addendum to Federal Tort Claim Act Claim for Damage Injury or Death of Jeremy Rinehart

No. 11. Witnesses:

Brian S. Love, M.D.
Love Family Practice Group
3157 Robert C. Byrd Drive
Beckley, WV 25801

Sanjay Mehta, D.O.
2111 College Avenue
Bluefield, VA 24605

Nurses who may appear in the attached medical records
Plateau Medical Center
430 Main Street
Oak Hill, WV 25801,

Sgt. R. S. Prince
Oak Hill Police Department
100 Kelly Avenue
Oak Hill, WV 25901

PFC M. J. Jarvis
Oak Hill Police Department
100 Kelly Avenue
Oak Hill, WV 25901

Officer C. F. Wingo
Oak Hill Police Department
100 Kelly Avenue
Oak Hill, WV 25901

Officer C. M. Bowling
Oak Hill Police Department
100 Kelly Avenue
Oak Hill, WV 25901